UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, and, ) | |
| COMMONWEALTH OF MASSACHUSETTS, ) | CIVIL ACTION NO. |
| Plaintiff-Intervenor, ) | |
| v. ) | |
| CITY OF HAVERHILL, MASSACHUSETTS, ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, the United States of America, through its undersigned attorneys, and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges as follows:

### NATURE OF ACTION

1. This is a civil action brought against the City of Haverhill, Massachusetts ("City", "Haverhill", or "Defendant") pursuant to Sections 309(b) and (d) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1319(b) and (d).

### JURISDICTION/VENUE/NOTICE

2. This Court has jurisdiction over the subject matter of this action pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

3. Venue is proper in this district pursuant to Section 309(b) of the CWA, 33 U.S.C.

§ 1319(b), and pursuant to 28 U.S.C. §§ 1391(b) and (c), and 28 U.S.C. § 1395.

4. Notice of the commencement of this action has been given to the Commonwealth of Massachusetts pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## DEFENDANT

5. Haverhill is a political subdivision of the Commonwealth of Massachusetts and is a municipality within the meaning of Section 502(4) of the CWA, 33 U.S.C. § 1362(4), and a person within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

## INTERVENING PLAINTIFF

6. Section 309(e) of the Act, 33 U.S.C. § 1319(e), provides:

> Whenever a municipality is a party to a civil action brought by the United States under this section, the State in which such municipality is located shall be joined as a party. Such State shall be liable for payment of any judgment or any expenses incurred as a result of complying with any such judgment entered against the municipality in such action, to the extent that the laws of that State prevent the municipality from raising revenues needed to comply with such judgment.

7. The Commonwealth of Massachusetts ("State") has committed to join this action pursuant to Section 309(e) of the CWA, 33 U.S.C. § 1319(e), as an intervening plaintiff. The United States reserves all claims which it may have against the State under Section 309(e).

## STATUTORY BACKGROUND

8. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants into navigable waters of the United States except in compliance with the terms and conditions of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

9. Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines the term "discharge of pollutants" to include "any addition of any pollutant to navigable waters from any point source."

10. Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines the term "pollutant" to

include, inter alia, "sewage . . . , biological materials . . . , and . . . municipal . . . waste discharged into water."

11.     Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines the term "navigable waters" as "the waters of the United States, including the territorial seas."

12.     Part 122 of Title 40 of the Code of Federal Regulations, promulgated under the CWA to regulate the NPDES permit program, defines "waters of the United States" to include, in relevant part, "[a]ll waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide," and tributaries to such waters.   40 C.F.R. § 122.2(a) and (e).

13.     Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines the term "point source" to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit . . . from which pollutants are or may be discharged."

14.      Pursuant to Section 402(p) of the Act, U.S.C. § 1342(p), on December 8, 1999 (64 Fed. Reg. 68722), EPA promulgated regulations at 40 C.F.R. § 122.26 that set forth NPDES permit requirements to address storm water discharges from municipal separate storm sewer systems serving populations of less than 100,000 persons.

15.     Section 402 of the CWA, 33 U.S.C. § 1342, provides that the Administrator may issue permits under the NPDES program for the discharge of pollutants into navigable waters of the United States upon such specific terms and conditions as the Administrator may prescribe.

16.     Section 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), authorize the commencement of an action for civil penalties and injunctive relief against any person who violates Section 301(a) of the CWA, 33 U.S.C. § 1311(a), or any condition or limitation in a permit issued under Section 402 of the CWA, 33 U.S.C. § 1342.

**GENERAL ALLEGATIONS**

17. Pursuant to Section 402 of the Act, 33 U.S.C. § 1342, Region I of the United States Environmental Protection Agency ("EPA") issued Permit No. MA0101621 to Haverhill on December 5, 2007 (the "2007 Permit"). The permit expired on January 31, 2013. In accordance with 40 C.F.R. § 122.6, because of its timely re-application for permit coverage, the Defendant continues to discharge under the terms of the 2007 Permit.

18. At all times relevant to this action, the 2007 Permit has authorized Haverhill to discharge wastewater to the Little River and Merrimack River from 20 combined sewer overflow ("CSO") outfalls and from the Haverhill Wastewater Treatment Facility ("Treatment Facility") through outfall 046. The CSO outfalls and outfall 046 are point sources within the meaning of Section 502(14) of the Act, 33 U.S.C. § 1362(14).

19. The Merrimack River is a "water of the United States" as defined in 40 C.F.R. § 122.2 and a "navigable water" within the meaning of Section 503(7), 33 U.S.C. § 1362(7).

20. The Little River, a tributary of the Merrimack River, is a "water of the United States" as defined in 40 C.F.R. § 122.2 and "navigable water within the meaning of Section 503(7), 33 U.S.C. § 1362(7).

21. The effluent released from the City's 20 CSOs and discharge serial number 046 contains "pollutants" as defined by Section 502(12) of the CWA, 33 U.S.C. § 1362(12). Effluent released from the City's CSOs and discharge serial number 046 adds pollutants to the Merrimack River and Little River and, therefore, constitutes a "discharge of pollutants" as defined in Section 502(12) of the CWA, 33 U.S.C. § 1362(12).

22. Pursuant to Section 402(p) of the Act, 33 U.S.C. § 1342(p), on December 8, 1999 (64 Fed. Reg. 68722), EPA promulgated regulations at 40 C.F.R. § 122.26 that set forth NPDES

permit requirements to address storm water discharges from Small Municipal Separate Storm Sewer Systems (MS4s).   On April 18, 2003, EPA issued an NPDES General Permit for Storm water Discharges from Small Municipal Separate Storm Sewer Systems (hereinafter, this NPDES General Permit will be referred to as the "Small MS4 General Permit" or "General Permit") pursuant to Section 402(p) of the Act, 33 U.S.C. § 1342(p), and 40 C.F.R. § 122.26.

23.     Pursuant to the Small MS4 General Permit, the City notified EPA that it was seeking coverage under such permit on July 8, 2003.   On October 6, 2003, EPA authorized the City to discharge storm water from its MS4.

24.     The 2003 Small MS4 General Permit expired May 1, 2008, but has been administratively continued.

25.     Part I.B.2(j) of the Small MS4 General Permit specifically provides that the Small MS4 General Permit does not authorize the discharge of storm water that is mixed with non-storm water, unless the non-storm water discharge is in compliance with another NPDES permit or is allowable under Part I(F) of the Small MS4 General Permit.

26.     Part II.A.1 of the Small MS4 General Permit requires permittees to develop a storm water management program implementing the minimum control measures described in Part II.B of the Small MS4 General Permit.

27.     Part II.A.2 of the Small MS4 General Permit requires that all elements of a storm water management program be implemented by the Permit's expiration.

28.     Part II.B.3 of the Small MS4 General Permit provides that each permittee must develop, implement, and enforce a program to detect and eliminate illicit discharges and "[t]o the extent allowable under state or local law, the permittee must effectively prohibit, through an ordinance or other regulatory mechanism, non-storm water discharges into the system and

implement appropriate enforcement procedures and actions. If a regulatory mechanism does not exist, development and adoption of such a mechanism must be included as part of the storm water management program."

29. Part II.B.3(c) of the Permit provides that "[t]he permittee must develop and implement a plan to detect and address non-storm water discharges, including illegal dumping, into the system."

30. Part II.B.4 of the Small General MS4 Permit provides that "[t]he permittee must develop, implement, and enforce a program to reduce pollutants in any storm water runoff to the MS4 from construction activities that result in a land disturbance of greater than or equal to one acre. The permittee must include disturbances less than one acre if part of a larger common plan."

31. Part II.B.4(a) of the Small MS4 General Permit provides that the construction site storm water run-off control program must include "[t]o the extent allowable under state or local law, an ordinance or other regulatory mechanism to require sediment and erosion control at construction sites. If such an ordinance does not exist, development and adoption of an ordinance must be part of the program."

32. Part II.B.5 of the Small MS4 General Permit provides that"[t]he permittee must develop, implement and enforce a program to address storm water runoff from new development and redevelopment projects that disturb greater than one acre and discharge into the municipal system."

33. Part II.B.5(a) specifies that the program must include "[t]o the extent allowable under state or local law, an ordinance or other regulatory mechanism to address post construction runoff from new development and redevelopment. If such an ordinance does not exist, development and adoption of an ordinance must be part of the program."

34. The effluent released from the City's Small MS4 contains "pollutants" as defined by Section 502(12) of the CWA, 33 U.S.C. § 1362(12). The release of effluent from the City's Small MS4 adds pollutants to waters of the United States and is, therefore, a "discharge of pollutants" as defined in Section 502(12) of the CWA, 33 U.S.C. § 1362(12).

## COUNT I
(Wet Weather CSO Discharges)

35. The United States realleges and incorporates by reference the allegations of paragraphs 1 through 34, above.

36. The water quality standards for the Merrimack and Little Rivers, set forth at 314 CMR 4.00, provide that the geometric mean of all E. coli samples taken within the most recent six months shall not exceed 126 coliform forming units ("cfu") per 100 milliliters ("ml") typically based on a minimum of five samples and no single sample shall exceed 235 cfu/100ml; alternatively, the geometric mean of all enterococci samples taken within the most recent six months shall not exceed 33 cfu/100 ml typically based on a minimum of five samples and no single sample shall exceed 61 cfu/100 ml.

37. Untreated CSOs from the City's wastewater system contain bacteria far in excess of the Massachusetts water quality standards.

38. At all times material to this complaint, the 2007 Permit has provided that CSO outfall discharges shall not cause or contribute to violations of water quality standards.

39. On one-hundred and eighty-nine (189) separate occasions since September of 2008, the Defendant has discharged untreated combined sewage from its CSO outfalls containing bacteria in sufficient concentrations to cause or contribute to violations of water quality standards.

40. By discharging wastewater that caused or contributed to water quality standards

violations in the Merrimack and Little Rivers, the City violated the 2007 Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

41. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or any condition or limitation of a permit issued under Section 402 of the CWA, 33 U.S.C. §1342, shall be subject to a civil penalty not to exceed $25,000 per day for each violation. This civil penalty level has been adjusted upward over time at 40 C.F.R. § 19.4 as required by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996). Pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note; Pub. L.114-74, Section 701), the civil penalty level is to be adjusted by July 1, 2016, with the adjustment to take effect no later than August 1, 2016. The adjusted civil penalty level is to be set forth at 40 C.F.R. Section § 19.4.

## COUNT II
(Dry Weather CSO Discharges)

42. The United States realleges and incorporates by reference the allegations of paragraphs 1 through 41, above.

43. Section D.1.a.i.5 of Part I of the City's NPDES Permit prohibits the discharge of sanitary and/or industrial wastewaters from CSO outfalls during dry weather.

44. On April 23, 2013, Haverhill reported to EPA and the MassDEP that it had discovered a CSO outfall discharge during dry weather to the Merrimack River at Bethany Avenue.

45. EPA collected a dry weather discharge sample from the Bethany Avenue CSO outfall on May 7, 2013 that contained bacteria and other pollutants associated with sewage. On

July 16, 2013, during another dry-weather period, an EPA inspection team observed flows from the Bethany Avenue outfall to the Merrimack River.

46. Upon information and belief, Haverhill will continue to discharge dry weather CSOs from the outfall near Bethany Avenue to waters of the United States in violation of the 2007 Permit and Section 301(a) of the CWA, 33 U.S.C § 1311(a), unless restrained by this Court.

47. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or any condition or limitation of a permit issued under Section 402 of the CWA, 33 U.S.C. §1342, shall be subject to a civil penalty not to exceed $25,000 per day for each violation.  This civil penalty level has been adjusted upward over time at 40 C.F.R. § 19.4 as required by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996). Pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note; Pub. L.114-74, Section 701), the civil penalty level is to be adjusted by July 1, 2016, with the adjustment to take effect no later than August 1, 2016.  The adjusted civil penalty level is to be set forth at 40 C.F.R. § 19.4.

## **COUNT III**
(Bypasses)

48. The United States realleges and incorporates by reference the allegations of paragraphs 1 through 47, above.

49. At all times relevant to this Complaint, Part II of the 2007 Permit has provided that:

> Bypass is prohibited, and the Regional Administrator may take enforcement action against a permittee for bypass, unless:
>
> > (1) Bypass was unavoidable to prevent loss of life, personal injury, or severe property damage;

    (2)   There were no feasible alternatives to the bypass, such as the use of auxiliary treatment facilities, retention of untreated wastes, or maintenance during normal periods of equipment downtime. This condition is not satisfied if adequate back-up equipment should have been installed in the exercise of reasonable engineering judgment to prevent a bypass which occurred during normal periods of equipment downtime or preventative maintenance; and

    (3)   The permittee submitted notices as required under Paragraph 4.c. of this section.

50. Since July 1, 2008, Haverhill has bypassed secondary treatment on at least 80 days when there was a feasible alternative to these bypasses.

51. Because there was a feasible alternative available, the bypasses on days with no precipitation or snow melt occurred in violation of the Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

52. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or any condition or limitation of a permit issued under Section 402 of the CWA, 33 U.S.C. §1342, shall be subject to a civil penalty not to exceed $25,000 per day for each violation.  This civil penalty level has been adjusted upward over time at 40 C.F.R. § 19.4 as required by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996). Pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note; Pub. L.114-74, Section 701), the civil penalty level is to be adjusted by July 1, 2016, with the adjustment to take effect no later than August 1, 2016.  The adjusted civil penalty level is to be set forth at 40 C.F.R. § 19.4

## COUNT IV
(Failure to Properly Operate the Collection System)

53.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 52, above.

54.     Part II.B.1 of the 2007 WWTF Permit provides that the City "shall at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit and with the requirements of stormwater pollution prevention plans." The Collection System is used to achieve compliance with the 2007 Permit.

55.     Periodic cleaning is an essential element of any proper collection system operation and maintenance plan.   The City does not have access to its entire collection system and has not cleaned its entire system in many years.

56.     By failing to clean its collection system, the City has failed to properly operate and maintain facilities used to achieve compliance with the 2007 Permit and thus violated the 2007 Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).

57.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or any condition or limitation of a permit issued under Section 402 of the CWA, 33 U.S.C. §1342, shall be subject to a civil penalty not to exceed $25,000 per day for each violation.  This civil penalty level has been adjusted upward over time at 40 C.F.R. § 19.4 as required by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996). Pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note; Pub. L.114-74, Section 701), the civil penalty level is to be

adjusted by July 1, 2016, with the adjustment to take effect no later than August 1, 2016.  The adjusted civil penalty level is to be set forth at 40 C.F.R. § 19.4

## Count V
(Sanitary Sewer Overflows)

58. The United States realleges and incorporates by reference the allegations of paragraphs 1 through 57, above.

59. On at least 57 separate occasions between December 12, 2008 and June 10, 2013, Haverhill's Collection System experienced sanitary sewer overflows ("SSOs"), which resulted in the discharge of untreated wastewater containing pollutants, including raw sewage, from point sources within the Collection System to waters of the United States.

60. Haverhill's SSOs discharged to the Merrimack River, the Little River, or their tributaries, all of which are "waters of the United States" as defined in 40 C.F.R. § 122.2 and are "navigable waters" under Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

61. Haverhill's discharge of untreated sewage constitutes a "discharge of pollutants" within the meaning of Section 502(12) of the CWA, 33 U.S.C. § 1362(12) from "point sources," as defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

62. None of Haverhill's SSO discharges to waters of the United States was authorized by a NPDES permit or any provision of the CWA.

63. The SSO discharges were, therefore, violations of Section 301(a) of the CWA, 33 U.S.C § 1311(a).

64. Upon information and belief, Haverhill will continue episodically to discharge pollutants to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C § 1311(a), unless restrained by this Court.

65.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or any condition or limitation of a permit issued under Section 402 of the CWA, 33 U.S.C. §1342, shall be subject to a civil penalty not to exceed $25,000 per day for each violation.  This civil penalty level has been adjusted upward over time at 40 C.F.R. § 19.4 as required by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996). Pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note; Pub. L.114-74, Section 701), the civil penalty level is to be adjusted by July 1, 2016, with the adjustment to take effect no later than August 1, 2016.  The adjusted civil penalty level is to be set forth at 40 C.F.R. § 19.4.

## Count VI
(Unauthorized Discharges)

66.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 65, above.

67.     From January 1, 2009, through the present, illicit connections to Haverhill's MS4 have existed that resulted in the discharge of untreated wastewater containing pollutants, including sewage, from the City's MS4 outfalls to waters of the United States.

68.     On May 7, 2013, EPA detected a chemical odor and observed brown foam, orange staining and bacterial/algae growth at three of Haverhill's MS4 outfalls.  Monitoring identified surfactants, ammonia, and/or selected pharmaceuticals and personal care products ("PPCP") in the flows from those outfalls on that date.   These samples indicate that City is discharging pollutants of human origin through at least these MS4 outfalls.   .

69.     The brown foam and associated sewage discharged through these outfalls are

"pollutants" within the meaning of Section 502(6) of the CWA, 33 U.S.C. § 1362(6).

70.     The discharge of non-storm water from Haverhill's MS4 outfalls is not authorized by the Small MS4 General Permit regardless of whether it commingles with storm water. Further, these discharges are not otherwise covered by a separate NPDES permit.

71.     The discharges of pollutants from Haverhill's MS4 outfalls, as described above, are violations of Section 301(a) of the CWA, 33 U.S.C § 1311(a).

72.     Upon information and belief, Haverhill will continue to discharge pollutants to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C § 1311(a), unless restrained by this Court.

73.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or any condition or limitation of a permit issued under Section 402 of the CWA, 33 U.S.C. §1342, shall be subject to a civil penalty not to exceed $25,000 per day for each violation.  This civil penalty level has been adjusted upward over time at 40 C.F.R. § 19.4 as required by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996). Pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note; Pub. L.114-74, Section 701), the civil penalty level is to be adjusted by July 1, 2016, with the adjustment to take effect no later than August 1, 2016.  The adjusted civil penalty level is to be set forth at 40 C.F.R. § 19.4.

## Count VII

(Failure to Implement Small MS4 General Permit)

74.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 73, above.

75. The City failed, to the extent allowable under state or local law, to effectively prohibit, through an ordinance or other regulatory mechanism, non-storm water discharges into the system by the Small MS4 General Permit's expiration date. To date Haverhill has failed to adopt such an ordinance or regulatory mechanism as required by the Small MS4 General Permit.

76. Haverhill's illicit discharge detection and elimination manual details a dry weather inspection procedure for each outfall and prescribes documentation of every inspection. The City identified 163 high priority outfalls in its 2010 IDDE Annual Report, and provided for continued screening for illicit connections. In its 2012 and 2013 IDDE annual report, Haverhill explained that no illicit connections were found during calendar years 2011 and 2012. In conjunction with EPA's detection of unknown sources of pollutants at three outfalls during dry weather, this information demonstrates that the City has not fully implemented a plan to detect and address illicit connections to its MS4 as required by the Small MS4 General Permit.

77. Haverhill failed, to the extent allowable under state or local law, to adopt an ordinance or other regulatory mechanism to require sediment and erosion control at construction sites prior to the expiration of the Small MS4 General Permit. To date, Haverhill has failed to adopt such an ordinance or other regulatory mechanism as required by the Small MS4 General Permit.

78. Haverhill failed, to the extent allowable under state or local law, to adopt an ordinance or other regulatory mechanism to address post construction runoff from new development and redevelopment by the Small MS4 General Permit's expiration date. To date, Haverhill has failed to adopt such an ordinance or other regulatory mechanism as required by the Small MS4 General Permit.

79. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or any condition or limitation of a permit issued under Section 402 of the CWA, 33 U.S.C. §1342, shall be subject to a civil penalty not to exceed $25,000 per day for each violation.  This civil penalty level has been adjusted upward over time at 40 C.F.R. § 19.4 as required by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996). Pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note; Pub. L.114-74, Section 701), the civil penalty level is to be adjusted by July 1, 2016, with the adjustment to take effect no later than August 1, 2016.  The adjusted civil penalty level is to be set forth at 40 C.F.R. § 19.4.

**RELIEF SOUGHT**

Wherefore, Plaintiff, the United States of America, respectfully requests that the Court grant the following relief:

1. Permanently enjoin the City of Haverhill, pursuant to Section 409(b) of the CWA, 33 U.S.C. § 1319(b), from any and all future violations of the CWA and from discharges of pollutants except as authorized by a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342;

2. Order the City of Haverhill to comply with all requirements of its Small MS4 General Permit;

3. Pursuant to Section 309(d) of the CWA and 40 C.F.R. § 19.4, assess civil penalties against Defendants in amounts up to the level set forth at 40 C.F.R. § 19.4 per day for each violation

4. Award the United States its costs in this action; and,

5. Grant such other relief as the Court deems proper and just.

                                            CARMEN ORTIZ
                                            United States Attorney

By:   /s/ *Susan M. Poswistilo*
       SUSAN M. POSWISTILO
       BBO # 565581
       Assistant U.S. Attorney
       John J. Moakley U.S. Courthouse
       One Courthouse Way, Ste. 9200
       Boston MA 02210
       (617) 748-3103
       susan.poswistilo@usdoj.gov

                                            JOHN J. CRUDEN

Assistant Attorney General
Environment and Natural Resources Division


/s/ *Brian G. Donohue*
BRIAN G. DONOHUE
Senior Attorney
Environmental Enforcement Section
P.O. Box 7611
Washington, DC 20044-7611
(202) 514-5413